**UNITED STATES, Appellee**

v.

**John M. GARGARO, Captain
U.S. Army, Appellant.**

No. 95–0331.
CMR No. 9201846.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 3, 1996.

Decided Sept. 27, 1996.

For Appellant: *Mark L. Waple* (argued); *Raymond C. McRorie, Major Roy H. Hewitt,* and *Captain Patricia A. Harris* (on brief).

For Appellee: *Major Lyle D. Jentzer* (argued); *Colonel John M. Smith* and *Lieutenant Colonel Eva M. Novak* (on brief); *Captain Michael E. Mulligan.*

*Opinion of the Court*

COX, Chief Judge:

Tried by general court-martial, military judge alone, at Fort Bragg, North Carolina, appellant was convicted pursuant to his pleas of: conspiring with several servicemembers to possess an unknown number of AK–47 rifles; violating a general order by wrongfully taking and retaining an AK–47 rifle; and possessing an unknown number of AK–47 rifles near or about Ft. Bragg, N.C. Contrary to his pleas, he was convicted of: larceny of an unknown number of AK–47 rifles, military property of the United States; and conduct unbecoming an officer by unlawfully importing an unknown number of AK–47 rifles into the United States. These offenses were violations of Articles 81, 92, 134, 121, and 133, Uniform Code of Military Justice, 10 USC §§ 881, 892, 934, 921, and 933, respectively.

* *See* 41 MJ 213, 229 n. *(1994).

The adjudged sentence extends to a dismissal, confinement for one year, and total forfeitures. The convening authority approved the sentence, but suspended all confinement remaining after December 23, 1992 (resulting in service of approximately 4 months' confinement). The Court of Military Review * affirmed without opinion.

Appellant was the commander of a headquarters service support company in Saudi Arabia and Kuwait. As the Gulf war had ended, a significant number of captured AK–47 automatic rifles were being picked up on the fields and turned in to various unit orderly rooms. One of these details was supervised by appellant. He and several members of his staff, all noncommissioned officers, conspired to conceal at least six of these weapons in a tent crate and two water blivots. This was done in the dark of night, and carefully, so as not to indicate that any intrusion had been made into these already-packed water blivots and pallet crate. Upon return to Ft. Bragg, these items were in the control of appellant's company as part of their unit equipment. There, the conspirators retrieved the AK–47s and distributed them to the expected recipients. Appellant received one, with the others going to the other members of the conspiracy. In addition, two other members of his company, possibly on their own, shipped back to themselves rifles in a footlocker box on one of the pallets.

The investigation into appellant's possession of the AK–47s was triggered by the fact that one of the latter rifles turned up in the possession of a drug dealer in North Carolina during a drug bust. When the rifle was discovered, the drug dealer stated he had bought it from a Private Fields, who was a member of appellant's company. Fields was contacted and, in essence, incriminated the others. Further investigation revealed the complicity of appellant and the others in this event, and various forms of disciplinary action were taken, including the court-martial of appellant.

We granted appellant's petition on two of his assigned issues:

# I

WHETHER THE MILITARY JUDGE ERRED IN PERMITTING THE GOVERNMENT TO INTRODUCE, OVER DEFENSE OBJECTION, TESTIMONY BY SERGEANT HART REGARDING THE POSSESSION OF AN AK–47 RIFLE BY A CIVILIAN DRUG DEALER.

# II

WHETHER THE MILITARY JUDGE ERRED WHEN HE DENIED THE DEFENSE THE OPPORTUNITY TO PRESENT EVIDENCE ON THE ISSUE OF SELECTIVE PROSECUTION/DISPARATE TREATMENT.

## ISSUE I

█ Appellant basically contends that, because the specific rifle involved was not proven to have come from the unknown number of rifles taken by him and his co-conspirators, but arguably was taken from a carton shipped by someone else, this evidence was improperly admitted under RCM 1001(b)(4), Manual for Courts–Martial, United States (1995 ed.). Appellant's argument is that this aggravating circumstance does not directly relate to or result from his offenses.

The challenged evidence emanates from the actions of Cumberland County, North Carolina, Deputy Sheriff (Sergeant) Hart, who testified on sentencing that he had been advised by an alcohol, tobacco, and firearms (ATF) agent that a soldier at Ft. Bragg by the name of Fields had sold to a drug dealer a fully automatic AK–47, which had come from Saudi Arabia. Hart executed a drug search warrant of the drug dealer's residence and confiscated the noted AK–47. He determined that Fields was a soldier in appellant's organization. Over a continuing defense hearsay objection, Hart was permitted to testify that Fields reported that the rifle was brought back from Saudi Arabia by appellant and a Sergeant Anderson, one of the co-conspirators.

The ATF agent also testified on sentencing and stated that Fields had told him he had received the firearm, which he sold to the drug dealer, from Sergeant Anderson. Fields confessed to the ATF agent that he had received three AK–47s from Sergeant Anderson.

However, Sergeant Anderson, testifying as a government witness, asserted that Fields was one of the soldiers designated to receive an AK–47 and that he did receive such a weapon. Appellant confirmed this in his unsworn statement on sentencing. Anderson also testified that, after receiving the shipment involving appellant and others, he and Fields found the footlocker containing three additional AK–47s in a cardboard box on a pallet. Anderson asserted that he had determined that a Lieutenant Wells, a Private West, and a Specialist Angel were responsible for shipping these three unrelated AK–47s found in the footlocker.

The issue here is whether there is sufficient "linkage" or "nexus" between this evidence in aggravation and the crimes of which the accused was convicted.

RCM 1001(b)(4) provides:

*Evidence in aggravation.* The trial counsel may present evidence as to any aggravating circumstance directly relating to or resulting from the offenses of which the accused has been found guilty.

█ Assuming *arguendo* that Hart and the ATF agent's testimony was improperly received, we are satisfied there was no possible prejudice to appellant in this judge-alone trial. *See United States v. Mann,* 26 MJ 1, 5 (CMA 1988). The evidence introduced before this military judge, sitting alone, clearly established the chain of events leading up to the arrest and conviction of appellant for the unlawful possession of these fully-automatic weapons. Likewise, the evidence showed the extent of the conspiracy and the responsibility that this commanding officer had in the matter. *Cf. United States v. Rust,* 41 MJ 472 (1995). Any unfair prejudice that may have resulted from the fact that the investigation was triggered by the finding of an AK–47 in the hands of a drug dealer, rather than in the hands of a bona fide collector of rare foreign weapons of war, was far outweighed by the probative value of the facts

and circumstances surrounding the charged offenses. Furthermore, in the absence of evidence to the contrary, we accept that the military judge gave the evidence its appropriate weight. Accordingly, any error in admitting the testimony of Deputy Sheriff Hart was harmless.

## ISSUE II

■ Appellant claims that he was the victim of selective prosecution. He avers that the military judge erred in not allowing him the opportunity to demonstrate that many weapons cases that surfaced, both as a result of Operation Desert Shield/Desert Storm and the 1983 Grenada invasion, did not result in criminal prosecutions. He asserts that this evidence would prove that senior officers received less harsh treatment than did junior persons and, specifically, less than appellant was facing.

The military judge did not receive this evidence. He ruled that, for his purposes, any evidence of selective prosecution must be limited to actions of the command involved in appellant's case and that reference to other commands of the Department of the Army or the Armed Forces as a whole was totally irrelevant to the issues in this case. The military judge stated:

> Assuming that this is a valid basis for appropriate relief, that is that there has been disparate disciplinary action taken, in my view, you are going to be limited to the Convening Authority in this case. You've got different Convening Authorities that have different considerations; and, they have—it's within their discretion to decide who to send to court or what kind of cases to send to court.
>
> *    *    *
>
> And one command may decide to prosecute certain types of cases, for whatever reason, and another command may decide that that's not really a legitimate concern within that command; and, I think that's pretty much recognized.

Further, the military judge stated:

> I don't see any reason to go outside of the command. I don't see where this court is going to be able to make a ruling comparing the actions of different convening authorities and I don't see a legitimate basis for that. Your request that the court consider documents or witnesses from outside the Special Forces Command is denied. Now, to consider your motion for appropriate relief in the nature of dismissal for disparate disciplinary action within the command, do you have any—. . . .

At this point defense counsel stated that they had nothing further to present.

■ As we noted in *United States v. Garwood,* 20 MJ 148, 154 (1985), quoting *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974):

> To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie,* (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.

*See also United States v. Armstrong,* —— U.S. ——, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996).

We hold that the military judge did not abuse his discretion in limiting the evidence in this case. Furthermore, appellant has failed to bear the "heavy burden of establishing" that "others similarly situated have not . . . been proceeded against because" of the same type of conduct and that he has been singled out for prosecution or that the "government's discriminatory selection of him" has been "in bad faith" as "based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *See United States v. Hagen,* 25 MJ 78, 83–84 (CMA 1987).

We agree with the following assessment offered by the Government in its Answer to Final Brief:

"Appellant's misconduct encompassed much more than wrongfully importing and possessing the AK-47 rifles. He initiated a conspiracy which involved the soldiers he commanded. Not only did he knowingly violate General Order No. 1 and disobey his battalion commander's orders, he abused his authority to compel those under his command to do the same. His leadership in this regard destroyed several promising careers, and had a devastating impact on morale and good order and discipline in the battalion." Answer at 10 n. 9.

We find nothing in the record of trial or in appellant's proffer that suggests that he was singled out for prosecution for any invidious or unlawful reason.

The decision of the United States Army Court of Military Review is affirmed.

Judges SULLIVAN, CRAWFORD, and GIERKE, and Senior Judge EVERETT concur.