UNITED STATES, Appellee,

v.

Jamal D. WILSON, Airman Basic
U.S. Air Force, Appellant.

No. 96–1249.
Crim.App. No. 31976.

U.S. Court of Appeals for
the Armed Forces.

Argued June 4, 1997.

Decided Sept. 17, 1997.

Cox, C.J., and Effron, J., filed concurring opinions.

For Appellant: *Major Kevin P. Koehler* (argued); *Lieutenant Colonel Kim L. Sheffield* and *Major Carol L. Hubbard* (on brief); *Colonel David W. Madsen* and *Captain Todi S. Carnes.*

For Appellee: *Colonel Theodore J. Fink* (argued); *Lieutenant Colonel Michael J. Breslin* and *Captain Mitchel Neurock* (on brief); *Major LeEllen Coacher.*

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by a general court-martial composed of a military judge sitting alone at Ellsworth Air Force Base, South Dakota, on November 14, 1995. In accordance with his pleas, he was found guilty of disrespect towards a superior commissioned officer and disorderly conduct, in violation of Articles 89 and 134, Uniform Code of Military Justice, 10 USC §§889 and 934, respectively. He was sentenced to a bad-conduct discharge and confinement and forfeiture of $400 pay per month for 3 months. On January 9, 1996, the convening authority approved the sentence. On June 26, 1996, the Court of Criminal Appeals affirmed the findings of guilty and the sentence without opinion.

This Court, on February 28, 1997, granted the following issue for review:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE CONCLUDED THAT TRIAL COUNSEL'S PRE-ARTICLE 32 RELATION TO THE CHIEF OF MILITARY JUSTICE OF A REMARK APPELLANT

HAD MADE CONCERNING THE CHIEF OF MILITARY JUSTICE TO A THIRD PARTY, ONE TO THREE MONTHS EARLIER, RESULTED IN RELEVANT VICTIM-IMPACT EVIDENCE CONSTITUTING PROPER AGGRAVATION EVIDENCE.

We hold that the military judge did not abuse his discretion in admitting testimony of the disrespected officer as to the subsequent concern which appellant's disrespectful words caused her. *See* RCM 1001 (b) (4), Discussion, Manual for Courts-Martial, United States (1995 ed.) (evidence of psychological impact on victim admissible).

The stipulation of fact in this case sets the stage for the granted issue. It states *inter alia*:

8. After an initial investigation by the Rapid City Police Department, the OSI [Office of Special Investigations] began investigating the incidents at the park. At some point during the investigation, between on or about 29 May 1995 and about the third week of July 1995, the accused was walking in front of the 28th Civil Engineer Squadron headquarters building when he saw his Squadron Section Commander, Second Lieutenant Edward M. French. The accused then approached 2Lt French. Both the accused and 2Lt French were in uniform and on duty. After exchanging salutes, the accused started asking 2Lt French about the status of the investigation into his behavior at the park. 2Lt French replied that he wasn't sure, to which the accused responded "Captain Power, that fucking bitch is out to get me," or words to that effect. This disrespect occurred on Ellsworth AFB.

9. The words "Captain Power, that fucking bitch is out to get me," or words to that effect, spoken by the accused were disrespectful and were directed toward Captain Carolyn M. Power. Captain Power is the Chief of Military Justice for the 28th Bomb Wing, Office of the Staff Judge Advocate. She previously served as the lead Trial Counsel in AB [Airman Basic] (then A1C [Airman First Class]) Wilson's first court-martial back in January 1995. The accused pleaded not guilty to all charges and specifications in that court-martial and was found guilty of one specification of assault consummated by battery and one specification of unlawful entry. Captain Power cross-examined the accused in that case. The accused was therefore aware of the fact Captain Power was his superior commissioned officer at the time he called her a "fucking bitch," or words of a similarly disrespectful nature and has never apologized for speaking of her in such unflattering terms.

At appellant's court-martial, the Government called Captain Power as a witness during sentencing. The record states:

TC: Yes, your Honor. We call Captain Carolyn Power to the stand, please.

IMC: Your Honor, before that takes place, I want to object to this witness testifying in the sentencing phase of this court-martial and ask that the Government make an offer of proof as to the relevance of her testimony.

MJ: I take it, trial counsel, this is the Captain Power mentioned in the specification of disrespect?

TC: That's correct, your Honor. The prosecution is allowed to introduce evidence of victim impact that is aggravation. Aggravation directly relates to or results from an offense. *This witness will testify as to the effect upon her that this accused's statements had, and therefore we believe that it's relevant victim impact evidence, sir.*

IMC: We don't believe that the charge of disrespect has an individual victim. We think the charge–that the victim in such an offense is the good order and discipline of the United States Air Force or the armed forces in general. The defense thinks that an officer should specifically be unvictimized personally by this and should not take it personally and should be concerned with the impact it has on the mission, which is why we have proscription in the UCMJ against showing disrespect. It's a victimless crime, your Honor, and there can be no victim impact in such a crime. Further, there is nothing–this is not a charge of communicating a threat where there would

be a victim. There was no threat communicated at all. Frankly, your Honor, the defense thinks that this is absurd that a captain in the United States Air Force and a JAG would be called to the stand to testify about the impact that such a statement had on her personally on a charge of disrespect toward an officer. We just believe its irrelevant.

MJ: Well, counsel, I think this offense in essence has two victims. I think it has potential impact on the overall welfare, morale, and discipline of the service, but the offense requires that it must be disrespect to a particular superior commissioned officer, and even though it does not appear Captain Power was personally present at the time of the disrespect, I assume it has been reported to her. And I don't believe there is any particular special rule applicable ti judge advocates. So, although I am prepared to weigh and evaluate this evidence carefully, I think it's appropriate that this witness be called if the prosecution feels there is relevant victim impact. So the objection is overruled. You can call your witness, Captain Kurlander.

(Emphasis added.)

Captain Power then took the witness stand and testified as follows:

Q: All right. You are aware that the comment was along the lines of: "Captain Power, that fucking bitch is out to get me?"

A: Yes.

Q: How did you feel when you found out that the accused had made that comment?

A: *I was a little concerned,* a little surprised that the comment had been made initially, *and it caused a little bit of concern.*

Q: Would you please explain what you mean by a little bit of concern?

A: *The accused,* in making that statement and specifically in naming me, *was making it personal* and was obviously placing the focus of blame for the situation he was in and obviously harboring resentment toward me personally, probably for the first court-martial that I was involved in where

I cross-examined him and for the position he was in now. *And in those kinds of situations I think you ignore that kind of a comment at your own peril, not knowing what the accused or his friends would do.* I wasn't really quite sure how much blame he was placing on me and how personal he was making it toward me.

Q: Well, as a result of learning that the accused said this about you, did you do anything?

A: I was a little more careful, especially on base. I contacted Agent McCarter over at OSI to kind of get a feel from him as to the nature of this kind of conduct in other courts, if he was aware of anything, threats against other attorneys and so forth, and what the common practice or procedure was in regard to those things.

Q: All right, and knowing that the accused has made this comment about you, did it cause you any particular concern at home?

A: Yes. My husband is frequently TDY [away on temporary duty] and with him gone frequently, *it caused me a little bit of concern, yes.*

Q: He's on active duty in the United States Air Force?

A: Yes, sir. He's a B-1 pilot over at the 37th Squadron.

Q: All right, and do you have any concerns today due to the accused's comment about you to Lieutenant French?

A: To a certain extent, yes, because now that he's been convicted of it, you know, that would further his blaming me for the situation he's in.

(Emphasis added.)

———

■  RCM 1001(b)(4) states:

"(4) *Evidence in aggravation.* The trial counsel may present evidence as to any aggravating circumstances *directly relating to or resulting from the offenses* of which the accused has been found guilty. Except in capital cases a written or oral deposition taken in accordance with RCM 702 is admissible in aggravation."

## Discussion

*Evidence in aggravation may include evidence* of financial, social, *psychological,* and medical *impact on or cost to any person or entity who was the victim of an offense* committed by the accused and evidence of significant adverse impact on the mission, discipline, or efficiency of the command directly and immediately resulting from the accused's offense.

*See also* RCM 1004 concerning aggravating circumstances in capital cases.

(Emphasis added.)

The Manual drafters similarly explained the scope of this provision as follows:

Subsection (4) makes clear that evidence in aggravation may be introduced whether the accused pleaded guilty or not guilty, and whether or not it would be admissible on the merits. This is consistent with the interpretation of paragraph 75b(3) (later amended to be paragraph 75b(4) of MCM, 1969 (Rev.) by Exec. Order No. 12315 (July 29, 1981)) in *United States v. Vickers,* 13 MJ 403 (CMA 1982). *See also* U.S. Dep't of Justice, Attorney General's Task Force on Violent Crime, Final Report Recommendation 14 (1981); Fed.R.Crim. P. 32(c)(2)(B) and (C). This subsection does not authorize introduction in general of evidence of bad character or uncharged misconduct. The evidence must be of circumstances *directly relating to or resulting from an offense* of which the accused has been found guilty. *See United States v. Rose,* 6 MJ 754 (NCMR 1978), *pet. denied,* 7 MJ 56 (CMA 1979); *United States v. Taliaferro,* 2 MJ 397 (ACMR 1975); *United States v. Peace,* 49 CMR 172 (ACMR 1974).

Drafters' Analysis, Manual, *supra* at A21-67 (emphasis added).

Appellant contends that it was error for the military judge to admit testimony from Captain Power concerning the impact appellant's disrespectful language had on her. He notes that he did not personally make this statement to Captain Power and that it was later communicated to her by others without his knowledge or consent. Any fear or uneasiness on her part, he argues, was either accidental, unreasonable, or too remote to qualify as an aggravating circumstance "directly relat[ed]" to his disrespect offense. Final Brief at 7-8. He argues that her testimony was "impermissibly indirect" and thus not admissible under RCM 1001(b)(4). Final Brief at 7. We disagree.

█ It is well established that a military judge has broad discretion to determine whether evidence proffered by the prosecution as aggravation evidence will be admitted under RCM 1001(b)(4). *See United States v. Rust,* 41 MJ 472, 478 (1995). Here, there is no contention that the military judge applied the wrong standard in exercising his discretion to admit this evidence as aggravation under the above Manual rule. *See generally United States v. Gordon,* 31 MJ 30, 36 (CMA 1990). Whether a circumstance is "directly relat[ed] to or results from the offenses" calls for considered judgment by the military judge, and we will not overturn that judgment lightly. *See United States v. Jones,* 44 MJ 103, 104–05 (1996).

The record before us shows that Captain Power, the Chief of Military Justice at appellant's base, was the object of appellant's disrespect and that her subsequent state of anxiety was caused by this conduct. *See* para. 13c(4), Part IV, Manual, *supra* (disrespect need not be in presence of superior); cf. *United States v. Rust, supra* (murder-suicide of dereliction of duty victim, her son, and her husband were independent results of disturbed mind). The record also shows other circumstances including Captain Power's prosecution of appellant at a prior court-martial, her isolated home-life situation, and appellant's history of physical confrontation, [1]

1. The stipulation of fact admitted in this case states:

11. The accused, during the time he has been on active duty, has received a Letter of Reprimand dated 17 June 93 for failing to show up for work after being released from a 28 CES building, Prosecution Exhibit 5, for which Unfavorable Information File Action (AF Form 1058) was taken on 17 June 1993, Prosecution Exhibit 6; a Letter of Reprimand dated 28 July 1992 for unlawfully pushing SrA [Senior Airman] Darrian Chapman with his hands and

which reasonably justified her fear or anxiety over appellant's words. *See United States v. Irwin*, 42 MJ 479, 483 (1995). Finally, the record of trial establishes a temporal identity between Captain Power's knowledge of appellant's offense, his court-martial for that offense, and Captain Power's continuing state of concern. In these circumstances, we conclude that the military judge did not abuse his discretion in admitting Captain Power's testimony as a witness in aggravation.[2] *See United States v. Jones, supra.*

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Judges CRAWFORD and GIERKE concur.

COX, Chief Judge (concurring):

I agree with the resolution of this case. I write, however, to express my concern with what appears to be a growing trend or practice in the prosecution of Air Force courts-martial.

In *United States v. Cox*, 45 MJ 153 (1996), the chief of military justice was called as a witness to testify that he personally investigated the allegations of the child witness and believed the child; otherwise, he would not have recommended prosecution in the case.

In *United States v. Godshalk*, 44 MJ 487 (1996), a defense counsel was used by the Office of Special Investigations to obtain evidence subsequently used to convict the servicemember. In that case, the chief of military justice was called as a witness to bolster the Government's sentencing case.

In *United States v. Argo*, 46 MJ 454 (1997), the staff judge advocate and members of his office crossed sabers over testimony given by a judge advocate in an Article 32 [1] investigation.

These cases suggest to me that there may be a growing trend in the Air Force to use the good offices and the prestige of the position of the judge advocate to influence the outcome of particular cases. I would remind the Bench and Bar that the Rules of Professional Conduct specifically prohibit a lawyer from acting as an "advocate at a trial in which the lawyer is likely to be a necessary witness." There is such a close connection between the trial counsel, the chief of military justice, and the staff judge advocate, at least in the eyes of the military and civilian communities, that it is disingenuous to suggest that Rule 3.7(a) [2] offers a place to hide. There is no doubt that the lawyers are appearing as witnesses to "advocate" a particular result, albeit they are disguised as witnesses.

EFFRON, Judge (concurring):

Threats against law enforcement personnel, prosecutors, and government representatives must be taken seriously to protect the safety of the individuals concerned and the integrity of the military justice system. Language that is disrespectful of a superior commissioned officer is contrary to the best interests of good order and discipline. Depending on the circumstances of a particular case, however, such language may or may not be threatening to the officer who was the object of the disrespectful language.

---

swinging at him with his fists, Prosecution Exhibit 7; a Letter of Reprimand dated 14 April 1992 for failing to report back to his duty section after being advised to do so by Capt Eversole, Prosecution Exhibit 8; an Article 15 (AF Form 3070) for assault, Prosecution Exhibit 9, which was vacated (AF Form 366) for disorderly conduct, Prosecution Exhibit 10; a civilian conviction for resisting arrest, Prosecution Exhibit 11; a civilian conviction for simple assault, Prosecution Exhibit 12; and a previous special court-martial conviction for assault, consummated by battery and unlawful entry, Prosecution Exhibit 13.

**2.** Appellant does not particularly argue that Captain Power's testimony was inadmissible under

Mil.R.Evid. 403, Manual for Courts-Martial, United States (1995 ed.). *See generally United States v. Rust*, 41 MJ 472, 478 (1995) ("evidence qualifying for admission under RCM 1001(b)(4) must also pass the test of Mil.R.Evid. 403, Manual, *supra*"). We note, however, that appellant was not unduly prejudiced by this evidence. *See United States v. Talbert*, 33 MJ 244, 247 (CMA 1991).

**1.** Uniform Code of Military Justice, 10 USC § 832.

**2.** Rule 3.7(a), Air Force Rules of Professional Conduct, [Lawyer as Witness], TJAG Policy Letter 26 (Oct 22, 1992).

Appellant asked Second Lieutenant (2Lt) French, his Squadron Section Commander, about the status of an investigation into his off-duty behavior. When the commander gave a noncommittal response, appellant made the following reference to the Chief of Military Justice: "Captain Power, that ... [expletive] is out to get me" or words to that effect.

There is no question that the language was disrespectful. On its face, however, it was not threatening to the object of the remark, and it was not treated as a serious threat. For over 5 weeks, 2Lt French made no mention of it to Capt Power or anyone else in the Office of the Staff Judge Advocate. It came to light only when 2Lt French mentioned it in passing to trial counsel during preparation for appellant's court-martial on another charge, and at that time he provided no indication that it was a threat.

Appellant was charged only with disrespect and was not charged with communicating a threat. Capt Power testified that she made several inquiries and worried about appellant. She said she "was a little concerned" and that she "wasn't really quite sure how much blame he was placing on me and how personal he was making it toward me." No evidence was presented that she or anyone else made a serious effort to obtain extra security or take any other significant steps to protect herself against perceived threats.

In an ideal world, the education provided to servicemembers under Article 137, Uniform Code of Military Justice, 10 USC § 937, would lead them to understand that government representatives are charged with the responsibility of seeking justice, not "getting" the accused. In the real world, it is hardly remarkable that an airman under investigation might believe that the chief of military justice is "out to get" that person.

Given the paucity of evidence in this case that would place appellant's language into a threatening context, appellant might have made a substantial case for excluding this testimony on the ground that the prejudicial aspect of the testimony outweighed any probative value. *See* Mil.R.Evid. 403, Manual for Courts–Martial, United States (1995 ed.). In the absence of such an objection, however, and in the context of a judge-alone trial, I agree with the majority that admission of the testimony was not prejudicial in the circumstances of this case.