**UNITED STATES**

v.

**Airman First Class LaVaughn K. KEY,
United States Air Force.**

**ACM S29751.**

U̇.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 20 Oct. 1999.

Decided 8 May 2001.

Appellate Counsel for Appellant: Colonel James R. Wise, Lieutenant Colonel Timothy W. Murphy, Major Stephen P. Kelly, and Captain Kyle R. Jacobson.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Major Jennifer R. Rider.

Before SCHLEGEL, ROBERTS, and BRESLIN, Appellate Military Judges.

## OPINION OF THE COURT

BRESLIN, Judge:

The appellant was convicted, in accordance with his pleas, of five specifications of wrongfully making or selling false military identification cards, in violation of Article 134, UCMJ, 10 U.S.C. § 934. A military judge sitting alone sentenced him to a bad-conduct discharge, confinement for 2 months, and reduction to E–1. The convening authority approved the findings and the sentence. The appellant raises several allegations of error. Finding no error, we affirm.

### Mission–Impact Evidence

The appellant worked as a customer service representative in the Military Personnel Flight (MPF), with access to and control over official personnel data for military members. His duties included making military identification cards for authorized service members and their dependents. The appellant used this position of trust and his special access to produce false identification cards for others, including an individual he thought to be a civilian. The appellant believed the fake identification cards would be used to show the bearers were over 21 years of age, enabling them to purchase alcoholic beverages in Alaska. Unfortunately for the appellant, one of the individuals he provided with a false military identification card was an informant. When confronted by investigators, he confessed. Thereafter, the appellant's commander removed him from his duty section, and assigned him to the base appearance team.

In sentencing, the government offered as evidence in aggravation under Rule for Courts–Martial (R.C.M.) 1001(b)(4) the testimony of the appellant's supervisor about the impact on the section resulting from the removal of the appellant and another involved in his crimes. The thrust of the testimony was that the customer service section was short-handed and heavily tasked, and the absence of the appellant and the other airman for two to three weeks required every-

one else to work harder, reduced efficiency, and lowered morale. Trial defense counsel objected on the grounds that the decision to remove the appellant from the duty section was discretionary—not required by law or regulation—therefore it was not proper evidence in aggravation. The military judge overruled the objection.

The appellant alleges the military judge erred in allowing his supervisor to testify during the sentencing portion of the trial about the impact on the appellant's duty section resulting from the removal of the appellant and another co-actor after the discovery of the offenses in question. We find no error.

R.C.M. 1001(b)(4) states, in pertinent part, that "[t]he trial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." At the time of trial, the Discussion of R.C.M. 1001(b)(4) explained, "Evidence in aggravation may include evidence of financial, social, psychological, and medical impact on or cost to any person or entity who was the victim of an offense committed by the accused and *evidence of significant adverse impact on the mission, discipline or efficiency of the command directly and immediately resulting from the accused's offense.*" (Emphasis added.)

■ A military judge has broad discretion to determine whether to admit evidence under R.C.M. 1001(b)(4) as aggravation evidence. *United States v. Wilson*, 47 M.J. 152, 155 (1997); *United States v. Rust*, 41 M.J. 472, 478 (1995). "Whether a circumstance is 'directly relat[ed] to or results from the offenses' calls for considered judgment by the military judge, and we will not overturn that judgment lightly." *Wilson*, 47 M.J. at 155 (citing *United States v. Jones*, 44 M.J. 103, 104–05 (1996)).

■ The testimony about the adverse impact on mission effectiveness was admissible as evidence in aggravation under R.C.M. 1001(b)(4). The appellant abused his position of special trust, and his removal from the position was a direct result of his crimes. He not only used his special access to gener-

ate false identification cards, but he also involved a co-worker in his offenses. The removal of these airmen from the squadron resulted in an adverse impact on the efficiency of that unit. This impact was a sufficiently direct and immediate result of his offenses to be admissible as evidence in aggravation. *See United States v. Armon*, 51 M.J. 83, 87 (1999) (fact that witness was offended when he learned appellant fabricated combat record admissible under R.C.M. 1001(b)(4)); *United States v. Jones*, 44 M.J. 103 (1996) (after conviction for adultery, fact that accused was HIV positive was an aggravating factor directly relating to the offense); *United States v. Wilson*, 35 M.J. 473, 477 (C.M.A. 1992) (upon conviction of sexual offenses with minors, evidence of parents' frantic search for the children admissible in aggravation); *United States v. Fontenot*, 29 M.J. 244, 251 (C.M.A.1989) (impact of rape on victim's family admissible); *United States v. Lawson*, 33 M.J. 946 (N.M.C.M.R.1991) *aff'd*, 36 M.J. 415 (C.M.A.1993) (upon conviction for dereliction of duty in failing to pick up posted road guard, cost of search for missing marine held directly related to offense); *United States v. Thornton*, 32 M.J. 112, 113 (C.M.A.1991) (testimony about revocation of security clearance admissible to show mission-impact). We find no undue prejudice to the appellant. The testimony of the supervisor was not inflammatory. Indeed, it was what most fact-finders would assume to be the effect on a unit when a service member is identified as an offender and removed from the duty section. *Fontenot*, 29 M.J. at 252.

■ We are convinced the military judge did not consider this evidence improperly. A military judge is presumed to know and apply the law correctly. *United States v. Raya*, 45 M.J. 251, 253 (1996); *United States v. Prevatte*, 40 M.J. 396, 398 (C.M.A.1994). In the absence of evidence to the contrary, we conclude that the military judge gave appropriate weight to the evidence. *United States v. Gargaro*, 45 M.J. 99, 102 (1996); *United States v. Davis*, 44 M.J. 13, 17 (1996); *United States v. Talbert*, 33 M.J. 244, 247 (C.M.A. 1991).

## The Pretrial Agreement

The appellant entered into a pretrial agreement with the convening authority. The appellant agreed to plead guilty to the charge and its specifications, to waive his statutory three days between the service of charges and trial, to elect trial by a military judge sitting alone, and to enter into a reasonable stipulation of fact surrounding the offenses. The convening authority agreed to refer the case to trial by special court-martial, and to approve no more than 5 months' confinement, if adjudged. There were no other limitations on the sentence to be approved.

All the terms of the pretrial agreement were contained in the "offer" portion of the agreement, except the specific limitation on the sentence to be approved, which was set out in the appendix to the agreement. At trial, the military judge inquired into the terms of the pretrial agreement, making sure the appellant entered into the agreement knowingly and voluntarily, and that the conditions of the agreement were satisfied. The military judge did not review the appendix until after announcing the sentence of the court. The defense did not object to this procedure at trial.

The appellant now contends that this was plain error. Specifically, he argues that the military judge erred by considering that portion of the agreement that revealed that the convening authority agreed to refer the case to trial by special court-martial. Citing *United States v. Rondash*, 30 M.J. 686 (A.C.M.R.1990), the appellant argues that the agreement to refer the case to a special court-martial "is equivalent to a sentence limitation." He maintains it was error for the military judge to become aware that "the case was deemed so serious as to be initially considered for trial by [g]eneral court-martial" and that the appellant already received a "break" through the referral to a special court-martial. We disagree, and find no error.

R.C.M. 910(f) sets out the procedure to be used in courts-martial where the parties have entered into a pretrial agreement. A plea agreement may not be accepted unless it complies with R.C.M. 705. R.C.M. 910(f)(1).

R.C.M. 705 establishes, inter alia, the approval authorities, permissible and prohibited terms or conditions, and the format for pretrial agreements. We note that one permissible term of a pretrial agreement is a promise by the convening authority to refer the charges to a certain type of court-martial. R.C.M. 705(b)(2)(A). The defense must submit any offer for a pretrial agreement. R.C.M. 705(d)(2). The rule also requires that the agreement be in writing and contain all the terms, conditions, and promises between the parties. *Id.* "The first part of the agreement ordinarily contains an offer to plead guilty and a description of the offenses to which the offer extends. *It must also contain a complete and accurate statement of any other agreed terms or conditions.*" Discussion, R.C.M. 705(d)(2) (emphasis added). The rule specifically provides that if the agreement includes a limit on the sentence to be approved, "such action shall be set forth on a page separate from the other portions of the agreement." R.C.M. 705(d)(2).

The parties are required to inform the military judge if a plea agreement exists. R.C.M. 910(f)(2).

> If a plea agreement exists, the military judge shall require disclosure of the entire agreement before the plea is accepted, provided that in trial before military judge alone the military judge *ordinarily* shall not examine any sentence limitation contained in the agreement until after the sentence of the court has been announced.

R.C.M. 910(f)(3) (emphasis added). The military judge must examine the plea agreement to assure compliance with R.C.M. 705. R.C.M. 910(f)(1). *See also United States v. Bartley*, 47 M.J. 182, 186 (1997) ("military law requires detailed inquiries concerning pretrial agreements"); *United States v. Jones*, 23 M.J. 305, 308 (C.M.A.1987) ("the military judge must assure on the record that the accused understands the meaning and effect of each provision in the pretrial agreement"); *United States v. Green*, 1 M.J. 453, 456 (C.M.A.1976) ("trial judges must share the responsibility ... to police terms of pretrial agreements to insure compliance with statutory and decisional law as well as adhere to basic notions of fundamental fair-

ness"). Additionally, R.C.M. 910(f)(4) provides: "The military judge shall inquire to ensure: (A) That the accused understands the agreement; and (B) That the parties agree to the terms of the agreement."

■ In the absence of defense objection at trial, we review the military judge's inquiry into the terms of the pretrial agreement for plain error. Mil.R.Evid. 103(d). "Plain error" is error that materially prejudices substantial rights. *Id.; see also United States v. Powell*, 49 M.J. 460, 464 (1998).

Examining the military judge's conduct in this case, we find no error, much less plain error. The Rules for Courts–Martial and case law require *all* terms and conditions to be set forth in the pretrial agreement, and also require the military judge to inquire into these terms on the record. The only limitation is that the military judge in a judge-alone case should not ordinarily inquire into any "sentence limitation." R.C.M. 910(f)(3).

As noted above, one of the terms of the pretrial agreement was that the convening authority would refer the charges to a special court-martial. Citing *Rondash*, the appellant argues that such an agreement is "equivalent to" a sentence limitation. However, the "equivalent to" language strains the rule too far. Considering a logical extension of this argument, in a general court-martial an agreement to drop certain charges would affect the maximum possible punishment, resulting in an agreement which is "equivalent to" a sentence limitation. However, such a construction would prevent a military judge from fulfilling the requirements of R.C.M. 910(f)(3) and *Green*, that he or she inquire into all the terms and conditions of the agreement.

■ Instead, we give the phrase "sentence limitation" a more restrictive meaning. Reading R.C.M. 910(f)(3) in conjunction with R.C.M. 705, we hold that a "sentence limitation" refers to a term or condition that would require "any specified action on the adjudged sentence." *See* R.C.M. 705(d)(2) (explaining what terms of a pretrial agreement must be included in the separate appendix). An agreement as to the forum of the court-martial is properly included in the pretrial agreement, subject to review by the military judge before announcement of the sentence.

■ Finally, even if the military judge had become aware of the sentence limitation before announcing the sentence, that fact would not be disqualifying. R.C.M. 910(f)(2) provides only that the military judge "ordinarily" shall not examine any sentence limitation until after the sentence is announced. *See United States v. Phillipson*, 30 M.J. 1019 (A.F.C.M.R.1990). A military judge, sitting alone, is presumed to "consider only that which is proper when adjudging the sentence." *United States v. Razor*, 41°C.M.R. 708, 1970 WL 7380 (A.C.M.R.1970), *aff'd*, 42 C.M.R. 172, 1970 WL 7030 (1970).

### The Deferment Request

■ The appellant was tried and sentenced on 20 October 1999. Since his adjudged sentence by special court-martial included a punitive discharge and some period of confinement, by operation of law the appellant also forfeited two-thirds of his pay. Article 58b(a), UCMJ, 10 U.S.C. § 858b(a). This forfeiture went into effect 14 days after the date the sentence was adjudged. Article 57(a)(1)(A), UCMJ, 10 U.S.C. § 857(a)(1)(A). Upon request, the convening authority could defer the forfeiture (or a reduction in rank) until the date the sentence is approved. Article 57(a)(2), UCMJ.

On 29 October 1999, trial defense counsel prepared a request for deferment of the reduction in rank and automatic forfeitures. The request was based upon the appellant's desire to continue making child support payments. Apparently the request was forwarded to the appellant in confinement, and eventually telefaxed to the base legal office on 3 November 1999, 14 days after trial. On 8 November 1999, the staff judge advocate (SJA) signed a formal recommendation that the convening authority disapprove the request. The recommendation was not served upon the defense. On 8 November 1999, the convening authority denied the request for deferment. On 19 November 1999, the convening authority took action approving the findings and sentence.

Citing *United States v. Spears*, 48 M.J. 768 (A.F.Ct.Crim.App.1998), *overruled in part on other grounds by United States v. Owen*, 50 M.J. 629, 631 (A.F.Ct.Crim.App.1998) (en banc), the appellant contends that the failure to serve the appellant or his counsel with the SJA's recommendation concerning the request for deferment was error. We disagree.

The requirements of Article 60, UCMJ, 10 U.S.C. § 860, are unique to the military justice system. That statute provides an accused certain rights before the convening authority takes action on the findings and sentence of a court-martial. The statute requires, inter alia, a formal recommendation by the servicing staff judge advocate, service of the recommendation on the defense, and the defense having an opportunity to comment on the recommendation and to submit matters for consideration in clemency. The issue before this Court is whether Congress intended those requirements to apply to requests for deferment of forfeitures under Article 57(a), UCMJ. We note our superior court has declined to rule whether the requirements of notice and an opportunity to comment apply to requests for deferment of forfeitures. *United States v. Brown*, 54 M.J. 289, 292 (2000).

The appellant relies on this Court's decision in *Spears* as the basis for their assignment of error. However, the decision in *Spears* does not support his position.

It is important to distinguish between a request for deferment under Article 57(a), UCMJ, and a request for waiver under Article 58b, UCMJ. A request for deferment concerns the reduction in grade or automatic forfeitures otherwise in effect between the date 14 days after sentence and the date of action. Article 57(a)(2), UCMJ. If the automatic forfeitures are deferred, the accused continues to receive his pay for the period of deferment. Similarly, if a reduction in grade is deferred, the accused continues in his prior grade until the deferment is rescinded or until the date of action. There is no limit on the period of deferment.

A waiver of automatic forfeitures is different. This waiver is only available for an accused with dependents, and may only be paid to those dependents. Article 58b(b), UCMJ. The waiver applies to the forfeitures that would otherwise result from the sentence. This waiver does not apply to reductions in grade. While a waiver may be approved at any time, it is normally part of the formal action of the convening authority. *Id.* A waiver may only extend for 6 months. *Id.*

The decision in *Spears* made this distinction clear at the start. In *Spears*, this Court began by determining whether a request for waiver under Article 58b, UCMJ, was a clemency request or whether it was more akin to a request for deferral under Article 57(a), UCMJ. *Spears*, 48 M.J. at 772. The Court found that a request for a waiver was unlike a request for deferment under Article 57(a), UCMJ, and instead treated it like a request for clemency. The *Spears* Court based its decision upon its finding that the request for waiver in that case was a request for clemency deserving of the unique treatment required by Article 60, UCMJ. It is unnecessary, however, to review the correctness of the decision in *Spears*, or whether it applies beyond the unique facts of that case. *Spears* did not involve a request for deferment, therefore, *Spears* does not support the appellant's position in this case.

In order to discern Congressional intent with regard to requests for deferment of automatic forfeitures, we examine other, similar provisions in the UCMJ. The most analogous provision is Article 57a, UCMJ, which provides for deferment of sentences to confinement. Of course, confinement may be part of a court-martial sentence. Article 56, UCMJ, 10 U.S.C. § 856; R.C.M. 1003(b)(8). A period of confinement adjudged by a court-martial begins to run from the date of the sentence. Article 57(b), UCMJ. However, Article 57a, UCMJ, provides that, upon application by an accused, the convening authority may defer service of the sentence to confinement until the date the sentence is ordered executed. Nothing in Article 57a, UCMJ, requires that the request for deferment of confinement be processed in accordance with Article 60, UCMJ. There is no requirement for a formal SJA recommendation, service of the recommendation upon the accused, or an opportunity for the accused to comment on

such a recommendation. Although not squarely addressing this issue, case law has never imposed such a processing requirement for requests for deferment of confinement. *United States v. Schneider*, 38 M.J. 387 (C.M.A.1993); *United States v. Sloan*, 35 M.J. 4 (C.M.A.1992); *Trotman v. Haebel*, 12 M.J. 27 (C.M.A.1981); *Pearson v. Cox*, 10 M.J. 317 (C.M.A.1981); *United States v. Bround*, 6 M.J. 338 (C.M.A.1979). Indeed, the elaborate procedural process inherent in Article 60, UCMJ, would be counter-productive to an accused seeking to avoid confinement for a period of time after sentencing.

The request at issue in this case was solely a request for deferment of forfeitures. Such requests may be approved or disapproved separately from the convening authority's formal action on the sentence. It is anticipated that such requests would be submitted and acted upon well in advance of formal requests for clemency under Article 60, UCMJ. There is nothing in Article 57(a), UCMJ, which suggests that the formal requirements of Article 60, UCMJ, are intended to apply to requests for deferment—indeed, the short 14 day period before the automatic forfeitures go into effect is inconsistent with the elaborate requirements of a formal recommendation, service on the appellant and counsel, a 10 day period for response, an addendum, and convening authority action which form the typical process under Article 60, UCMJ. The language of Article 57(a), UCMJ, regarding deferment of forfeitures is strikingly similar to the language of Article 57a, UCMJ, regarding deferment of confinement, which has never been held to require the process dictated by Article 60, UCMJ.

We considered carefully the requirements of Article 57(a), UCMJ, and the purposes underlying Article 60, UCMJ. We find no basis in law for the alleged requirement for the SJA to serve a formal recommendation upon the defense for comment when an accused requests deferment under Article 57(a), UCMJ.

We also find that the process employed in this case did not offend fundamental concepts of fairness. In *Spears*, 48 M.J. at 776, the Court found the deputy staff judge advo-cate's advice to be "extremely inflammatory." The Court also noted that the trial counsel was involved in forwarding the recommendation to the convening authority, contrary to Article 6, UCMJ, 10 U.S.C. § 86. *Id.* at 774. For these reasons, the *Spears* Court invoked "concepts of basic fairness and procedural due process" in finding error for failure to serve the recommendation on defense counsel. Such aggravating circumstances were not present in this case. The review was prepared by the staff judge advocate and was not inflammatory. The forfeiture period in question (from the date of the request to the date of the formal action) is only 16 days. Under the circumstances, the SJA's recommendation and the denial of the request for deferment does not offend our notions of fairness.

### Ineffective Assistance of Defense Counsel Post–Trial

The appellant was sentenced by this special court-martial on 20 October 1999. At that time he was advised in writing of his right to submit matters to the convening authority in mitigation, extenuation or clemency. The staff judge advocate's recommendation (SJAR) was served on trial defense counsel on 2 November 1999 and on the appellant on 8 November 1999. As noted above, the convening authority denied the appellant's request for deferment of forfeitures on 8 November 1999.

In an undated letter, the appellant waived his right to submit clemency matters. A memorandum in the record of trial indicates the office of the staff judge advocate received this letter by telefax on 16 November 1999. (The waiver itself indicates it was telefaxed on 18 November 1999.) According to the memorandum, neither the trial defense counsel nor the appellant submitted a response to the SJAR within the 10 day time limit established by R.C.M. 1106(f)(7). The convening authority approved the findings and sentence on 19 November 1999. Although not indicated precisely in the record, the appellant's approved confinement, less "good time," would have expired about 10 December 1999.

The appellant now alleges his trial defense counsel provided ineffective assistance of counsel post-trial, by failing to advise him of

his right to request waiver of forfeitures on behalf of his dependents. The appellant submitted an affidavit on appeal, indicating that he was married to another military member at the time of trial, and that he was paying $321.00 per month in court-ordered child support for a daughter, born out-of-wedlock. The appellant also submitted pay statements for the period of his confinement, reflecting the child-support payments. The appellant states that he cannot recall whether his defense counsel ever advised him that he could request waiver of automatic forfeitures, but claims that if he would have known he would have requested a waiver on behalf of his daughter.

■ In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-part test for consideration of claims of ineffective assistance of counsel. The appellant must show: (1) a deficiency in counsel's performance that was "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) that the "deficient performance prejudiced the defense through errors ... so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Our superior court has applied this test for claims of ineffective assistance of counsel in the military justice system. *United States v. Scott*, 24 M.J. 186 (C.M.A.1987). An appellant is entitled to raise claims of ineffective assistance of counsel regarding post-trial representation, judged by the same standard as representation at trial. *United States v. Wiley*, 47 M.J. 158, 159 (1997); *United States v. MacCulloch*, 40 M.J. 236, 239 (C.M.A. 1994).

■ We review issues of effectiveness of counsel de novo. *Wiley*, 47 M.J at 159. Counsel are presumed to be competent. *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The Court of Appeals for the Armed Forces has set out a three-part test to determine whether the presumption of competence has been overcome:

(1) Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?

(2) If the allegations are true, did defense counsel's level of advocacy fall "measurably below the performance ... [ordinarily expected] of fallible lawyers"? and

(3) If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result.

*United States v. Grigoruk*, 52 M.J. 312, 315 (2000) (citing *United States v. Polk*, 32 M.J. 150, 153 (C.M.A.1991)). In conducting this analysis, we need not begin at the beginning. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

■ An appellant has the burden of establishing a factual foundation for a claim of ineffective representation. *Grigoruk*, 52 M.J. at 315. Broad, generalized accusations are not sufficient. *United States v. Moulton*, 47 M.J. 227, 229 (1997).

■ This Court has the authority to compel trial defense counsel to provide an explanation for their actions. *United States v. Lewis*, 42 M.J. 1, 6 (1995). However, our superior court has expressed misgivings about requiring such explanations unless it is necessary.

[T]rial defense counsel should not be compelled to justify their actions until a court of competent jurisdiction reviews the allegation of ineffectiveness and the government response, examines the record, and determines that the allegation and the record contain evidence which, if unrebutted, would overcome the presumption of competence.

*Id.* Indeed, our superior court has stated, "If the claim can be resolved on the record, no post-trial evidence need be or should be sought." *United States v. Ingham*, 42 M.J. 218, 224 (1995).

■ With this guidance in mind, we turn to the case at hand. After examining the record, we find no prejudice sufficient to

undermine confidence in the outcome. In fact, it does not appear the appellant has even alleged a deficiency sufficient to support his claim.

We consider first the appellant's contention that he was prejudiced by the alleged failure to advise him of his opportunity to request waiver of forfeitures. The appellant suggests that the automatic forfeitures, coupled with his dire financial circumstances, prejudiced his ability to provide support for his daughter. However, reviewing the military pay statements submitted by the appellant on appeal, it appears that his monthly allotment for the payment of his child support obligation was paid, notwithstanding the forfeitures resulting from his sentence.

The appellant also alleges prejudice in that, had he known of the opportunity to request waiver of forfeitures, he would have made such a request and it would have been granted. However, a more complete review of the circumstances suggests otherwise. The appellant was advised, in writing, at the conclusion of his trial, of his right to submit matters for consideration by the convening authority. While this standard statement did not specifically discuss waiver of automatic forfeitures, it clearly informed the appellant of his best avenue for clemency. The appellant requested deferment of automatic forfeitures, and it was denied on 9 November 1999. On that same day, he was served with a copy of the SJAR, and advised of his right to respond within 10 days. On or about 16 November 1999, the appellant telefaxed to the base legal office his waiver of his right to submit clemency matters. The defense never submitted comments to the SJAR.

We look at the appellant's circumstances as of 19 November 1999, the day his response was due. He was in confinement, but had only about 20 days of confinement (and the concomitant forfeitures) remaining to be served. He was married, but his wife was an active duty service member, presumably drawing full pay and allowances. He had an obligation to provide child support payments, but his partial forfeitures allowed him to make those payments without further relief. His earlier request for deferment of forfeitures to pay child support had been denied.

Under the circumstances, it is highly doubtful that a request for waiver of forfeitures for the same reason would be successful. Moreover, where as here the appellant otherwise thought so little of his chances for clemency that he did not bother to submit anything at all, it seems highly unlikely that learning of this additional opportunity would have changed his mind. The appellant has failed to demonstrate the requisite prejudice.

Even if there had been prejudice, the appellant's claim still fails, for the appellant has not alleged deficient performance by defense counsel. The crux of the allegation of ineffectiveness is that the defense counsel never advised the appellant of the opportunity to request waiver of forfeitures. However, the appellant's affidavit doesn't say that. Instead, he states that he cannot recall whether his counsel ever advised him of that opportunity. At the risk of seeming unreasonably picky, that is a big difference. Where the appellant's statement is prepared with the assistance of counsel for the purpose of supporting this precise issue, we have no difficulty holding the appellant to his own words. Here, he fails to allege that his counsel did not advise him properly.

### Article 58b, UCMJ, and the Double Jeopardy Clause

We find no merit in the appellant's contention that the automatic forfeiture provision of Article 58b, UCMJ, 10 U.S.C. § 858b, violates the Double Jeopardy Clause of the Fifth Amendment. *United States v. Promin*, 54 M.J. 467 (2001).

### Conclusion

The findings are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Accordingly, the findings and sentence are

AFFIRMED.