UNITED STATES,

v.

Scott R. DEZOTELL, Seaman Recruit (E–1), U.S. Navy.

NMCM 200001869.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Decided 18 Feb. 2003.

Lt Rebecca S. Snyder, JAGC, USNR, Appellate Defense Counsel.

Lt Jason A. Lien, JAGC, USNR, Appellate Government Counsel.

Before LEO, Chief Judge, FINNIE, Senior Judge and RITTER, Appellate Military Judge.

RITTER, Judge:

A military judge, sitting as a special court-martial, convicted the appellant, pursuant to his pleas, of unauthorized absence and missing movement, in violation of Articles 86 and 87, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 887. The appellant was sentenced to confinement for 90 days, forfeiture of $500.00 pay per month for 2 months, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

We have carefully considered the record of trial, the two assignments of error, and the Government's response. We conclude that the findings and sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. § 859(a) and 866(c).

### Facts

The appellant commenced a period of unauthorized absence (UA) after learning that a childhood friend had been killed in an automobile accident. He remained away for nearly 7 months, during which time he

missed several ship's movements. His unit, the USS ABRAHAM LINCOLN (CVN 72), was in the midst of "work-ups" when he went UA, including the participation in a "Final Examination Problem" or FEP. Record at 42–43. Testimony at trial established that this phase of a ship's operational cycle is particularly crucial, as outside inspectors are on board to determine whether the vessel is ready for a major deployment. *Id.*

The Government called a single witness in aggravation, Senior Chief Boatswain's Mate (BMCS) Sleigh. In addition to explaining the significance of the FEP exercise, BMCS Sleigh described the operational schedule of the ship during the time of the appellant's absence. It consisted of several deployments, each lasting "a few weeks," and scarce liberty privileges for the ship's crew. After laying this foundation, the trial counsel asked about the impact of an unauthorized absence on the unit:

Q. During the course of these training cycles, basically in FEP, is it important to have every Sailor on board?

A. Yes, sir.

Q. And why is that?

A. Manning issue. The Navy is everybody knows the Navy is already hurting for man power [sic].

DC: Objection. Your Honor, he is not going—talking t all about my client. This is not relevant to general [sic] who was on board, who wasn't on board. This trial is about Seaman Dezotell not to [sic] any other recruits on the ship for the LINCOLN.

MJ: Overruled.

Q. Why is it important that every Sailor is onboard during the course of these exercises?

A. We all have a job to do whether you are an E 1 or O–10, and if one person is not there you have somebody else that is going to have to take up their slack for them. Examples being, each department we have to send people to temporary assigned duties. Different jobs, whether it be Master at Arms Division or Food Service Attendant, whatever, and that person is not there

and whether they go UA or they get injured or something. Then that division has to send another body to replace that person that is missing or gone.

Record at 45–46.

On cross-examination, BMCS Sleigh testified that during October 1999, when the appellant commenced his absence, BMCS Sleigh had minimal interaction with the appellant, and that the appellant was temporarily assigned to food service duties outside of his department at the time he went UA. *Id.* at 46.

**Improper Aggravation Evidence**

The appellant argues that the military judge abused his discretion in admitting BMCS Sleigh's testimony that the appellant's unit had been adversely impacted by his unauthorized absence. Appellant's Brief of 19 Apr. 2002 at 4. Dismissing BMCS Sleigh's testimony as "the mere conjecture of a witness who was obviously unfamiliar with Appellant and his unit," (Appellant's Brief of 19 Apr 2002 at 5) the appellant argues that the Government's evidence failed to establish a connection between his absence and an adverse impact on the unit. We disagree.

The standard of review on appeal for the admission or exclusion of evidence on sentencing is whether the "judge clearly abused his discretion." *United States v. Clemente,* 50 M.J. 36, 37 (1999)(quoting *United States v. Rust,* 41 M.J. 472, 478 (1995) and *United States v. Zakaria,* 38 M.J. 280, 283 (C.M.A.1993)). RULE FOR COURTS MARTIAL 1001(b)(4), MANUAL FOR COURTS MARTIAL, UNITED STATES (2000 ed.) sets forth the rule as to what evidence the prosecution can present in aggravation during the presentencing phase of courts-martial, and provides that "[t]he trial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." This evidence may include "evidence of significant adverse impact on the mission, discipline, or efficiency of the command directly and immediately resulting from the accused's offense." *Id.* Whether evidence is "directly relat[ed] to or result[s] from the offenses,"

and is thus admissible in aggravation, calls for considered judgment by the military judge, and such judgment will not lightly be overturned. *United States v. Wilson*, 47 M.J. 152, 155 (1997).

■ Evidence qualifying for admission under R.C.M. 1001(b)(4) must also pass the test of Military Rule of Evidence 403, MANUAL FOR COURTS MARTIAL, UNITED STATES (2000 ed.). *Rust*, 41 M.J. at 478. When, as in this case, the military judge fails to conduct a Rule 403 balancing test while overruling the objection to sentencing evidence, we must examine the record ourselves. *United States v. Manns*, 54 M.J. 164, 166 (2000).

■ We consider BMCS Sleigh's testimony as having fairly stated, in contextual terms, the detrimental impact of the appellant's offenses of UA and missing movement on the mission and efficiency of the command. BMCS Sleigh's explanation of the ship's operational schedule and the significance of the FEP were helpful in weighing the specific impact of the appellant's absence during a period of heightened responsibilities. Likewise, his account of the impact on the Deck Department reveals a logical, even obvious relationship to the appellant's offenses. Indeed, it was what most fact-finders would reasonably assume to be the effect on a unit when a service member is absent and others have to assume his or her responsibilities. *See United States v. Fontenot*, 29 M.J. 244, 252 (C.M.A.1989).

R.C.M. 1001(b)(4)'s requirement that evidence in aggravation must "directly relat[e] to or result[ ] from the offenses of which the accused has been found guilty" sets forth the need for a *direct logical connection* or relationship between the offense and the evidence offered. *See Rust*, 41 M.J. at 478. However, the Rule does not require that the evidence must be of a type that is subject to precise measurement or quantification. *See United States v. Armon*, 51 M.J. 83, 87 (1999)(fact that witness was "personally offended" when he learned appellant fabricated combat record admissible under R.C.M. 1001(b)(4)); *Fontenot*, 29 M.J. at 252, (impact of rape on victim's family admissible); *United States v. Key*, 55 M.J. 537, 538–39 (A.F.Ct.Crim.App.2001)(testimony that ac-

cused's removal from customer service section left it "short-handed and heavily tasked," and "required everyone else to work harder, reduced efficiency, and lowered morale" held admissible under R.C.M. 1001(b)(4)), *aff'd*, 57 M.J. 246 (2002).

BMCS Sleigh was one of the leading chief petty officers in the Deck Department of the USS ABRAHAM LINCOLN and personally knew and supervised the appellant. The appellant was assigned to the same department, although at the time he went UA he was temporarily assigned out of the department, thereby obligating his department to provide a replacement during his absence. Record at 46. Any lack of specificity in tying the appellant's absence into more detailed consequences to the ship's mission or to individual command members who had to work harder because the appellant was UA, does not equate to a lack of logical and direct connection between his absence and the repercussions that BMCS Sleigh identified in his testimony. We therefore find no clear abuse of discretion in the military judge's determination that BMCS Sleigh's testimony was admissible under R.C.M. 1001(b)(4).

As for the Mil. R. Evid. 403 balancing test, nothing BMCS Sleigh testified to could reasonably be construed as uncharged misconduct, as an emotional appeal, or otherwise unfairly prejudicial. The probative value is strong, although we suspect that none of the information BMCS Sleigh provided would surprise a military judge from the Naval service. In our view, the danger of unfair prejudice from BMCS Sleigh's testimony was nonexistent. Moreover, the case was before a military judge alone, and we presume that the military judge gave the evidence no more weight than it was entitled. *United States v. Prevatte*, 40 M.J. 396, 398 (C.M.A.1994). If the military judge erred, it was harmless error.

### Dilatory Post Trial Processing

■ The appellant also contends, in a summary assignment of error, that this Court should disapprove his bad-conduct discharge, because the post-trial processing of his case took approximately 14 months. No prejudice is alleged as a result of this delay.

*See* Arts. 59(a) and 66(c), UCMJ; *United States v. Williams*, 55 M.J. 302 (2001); *United States v. Hudson*, 46 M.J. 226 (1997); *United States v. Jenkins*, 38 M.J. 287 (C.M.A.1993).

We are cognizant of this Court's power under Article 66(c), UCMJ, to grant sentence relief even in the absence of actual prejudice. *See United States v. Tardif,* 57 M.J. 219, 224 (2002). Assuming the post-trial processing time in this case is excessive, we do not find any prejudice or other harm to the appellant resulting from it, nor do we conclude that it affects the "findings and sentence [that] *'should be approved,'* based on all the facts and circumstances reflected in the record."

*Id.* (emphasis added). We, therefore, decline to grant relief on this ground.

### Conclusion

Accordingly, we affirm the findings and sentence, as approved on review below.

Chief Judge LEO and Senior Judge FINNIE concur.